IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

UNITED STATES OF AMERICA

Government

Vs. No. 4:19-cr-00498-BSM-2
March 8, 2023
MARIO WATERS Little Rock, Arkansas
10:23 a.m.

Defendant

# TRANSCRIPT OF SENTENCING HEARING

BEFORE THE HONORABLE BRIAN S. MILLER

UNITED STATES DISTRICT JUDGE

APPEARANCES:

On Behalf of the Plaintiffs:

KRISTIN HUNTINGTON BRYANT
U.S. Attorney's Office
Eastern District of Arkansas
P.O. Box 1229
Little Rock, Arkansas 72203

On Behalf of the Defendants:

GARRY J. CORROTHERS
Attorney at Law
221 West Second Street, Suite 617
Little Rock, Arkansas 72201

Proceedings reported by machine stenography and displayed in realtime; transcript prepared utilizing computer-aided transcription.

THE COURT: This is the case of United States of Americans versus Mario Waters. The case number is 19-CR-498. Mr. Waters is in the courtroom with his lawyer, Gary Corrothers. The United States is being represented by Kristin Bryant.

Is there any reason for a in-camera discussion this morning?

MS. BRYANT: No, Your Honor.

MR. CORROTHERS: No, Your Honor.

THE COURT: Okay. We were here, I think it was back in October, and I think I asked Mr. Waters' lawyer if he had had a chance to sit down with him and go over his presentence report with him. And at that point, counsel told me he'd gone over it the day before or tried to or something. And so I got a little upset and I dismissed counsel, and we appointed Mr. Corrothers to represent Mr. Waters.

Mr. Waters, have you had a chance to communicate with Mr. Corrothers and go over your case with him?

THE DEFENDANT: Yes, sir.

THE COURT: Are you satisfied with the representation he's given you so far?

THE DEFENDANT: Yes, sir.

THE COURT: Now, my notes indicate that Mr. Waters entered a plea of guilty on October 29 to

conspiracy to commit sex trafficking of a minor. When he entered his plea of guilty, I told you, Mr. Waters, that probation would go out and perform a presentence investigation and would prepare a report with all of your background information in it. I have a report that is dated December 22 of 2021 and it looks like it was revised on October 6, 2021.

Have you now had a chance to go over that report or look at it?

THE DEFENDANT: Yes, sir.

THE COURT: And, Mr. Corrothers, do you have any objections to the report?

MR. CORROTHERS: No, Your Honor.

THE COURT: And, Ms. Bryant, does the government have any objections?

MS. BRYANT: No, Your Honor.

THE COURT: I'll adopt the report as written.

Now, Mr. Waters, I probably told you this when you entered your plea of guilty, that in the federal system, we have our law that tells me what the minimum and maximum sentences are that I can give you. I have to give you a sentence within the range provided by the law. In addition to the law, we have sentencing guidelines that help me determine what an appropriate sentence is. I am not required to give you a sentence within the range

provided by the guidelines as long as I give you a sentence within the range provided by the law.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: With regard to the law, the range of punishment is from zero to life of imprisonment, a fine of up to $250,000, five years to life of supervised release, probation is not authorized, and there is a mandatory assessment of $100.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: With regard to the guidelines, you have a base offense level of 34. You receive a two-level increase or two-point increase because the offense involved the commission of a sex act, which brings you to 36. You have a two-point reduction for acceptance of responsibility, which brings you back down to 34.

Does the government move for a third point?

MS. BRYANT: We do, Your Honor.

THE COURT: That brings you to a total offense level of 33. You have 16 criminal history points which results in a criminal history category of VI.

Someone who has a total offense level of 33 with a criminal history category of VI has a total offense range -- or has a sentencing range of 235 months to 293 months

of imprisonment, a fine of between 35,000 to $250,000, the guideline range for supervised release is from five years to life, probation is not authorized by the guidelines, and there is a mandatory special assessment of $100.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Corrothers, I received the letter from Mr. Waters' father and I've read it. Do you have any departure or variance argument?

MR. CORROTHERS: No, Your Honor.

THE COURT: Does the government have any departure or variance argument?

MS. BRYANT: We have a variance argument.

THE COURT: You can make that now.

MS. BRYANT: Your Honor, if I may just argue for the sentence that we believe is the appropriate sentence in this case. We're asking the Court to impose a life imprisonment just like the Court did with the co-defendant, Mr. George.

I would note that Mr. Waters has a criminal history category of VI, whereas Mr. Waters had a criminal history category of IV. I'd note probably what the Court would see as the main difference between the two of them is that Mr. George was a custodial -- a custodial parent of the victim in the case. But I would note that Mr. Waters, his

conduct is equally as reprehensible and disgusting and as life altering as Mr. George's was. And I just don't see any reason to give them different sentences. I think their conduct justifies a life sentence. The bases that the Court stated for giving Mr. George a life sentence are equally applicable to Mr. Waters.

For all of those reasons, we would ask that you give him a life sentence.

THE COURT: Mr. Corrothers, I'll give you a chance to argue against that.

MR. CORROTHERS: Judge, could I just go ahead --

THE COURT: You can do it either from there or from the lectern, either one you want, Mr. Corrothers.

MR. CORROTHERS: So this I guess will be against the variance and for a sentence that we would ask the Court to impose.

THE COURT: Yes, sir.

MR. CORROTHERS: The low end of the guideline range is 235 months, and that's a few months shy of 20 years. And we think that that sentence would be sufficient but not greater than necessary as far as the sentencing mandate.

Now, of course, I understand Mr. George was sentenced to life in prison. I think there are differences between Mr. George and Mr. Waters. Just the sheer weight of just

looking at the sentencing guidelines -- excuse me -- the PSR itself.

Just looking at the paragraphs without even going into the substance, Mr. George is mentioned, looks like, substantially more than Mr. Waters is. So Mr. George is mentioned in a couple of more paragraphs than Mr. Waters. He's mentioned in Paragraph 17, 19, and 20, which is kind of the bottom. So just reading the PSR, it looks like that Mr. George is far more culpable than Mr. Waters.

It appears from -- for instance, on Paragraph 21 of the presentence report, it appears that, just reading that paragraph, Mr. George was the primary person. He had a relationship with CT's mother. It looks like he was kind of the driving force as what was going on as far as the conduct of the parties. And even in Paragraph 21, it does say that Mr. George threatened Mr. Waters by placing a gun to his head, which on its face makes it seem like Mr. George was the driving force, for lack of a better way of saying it, worse than Mr. Waters was.

So just -- this is just comparator argument.

THE COURT: I understand.

MR. CORROTHERS: As a comparator, we only got one comparator; that's Mr. George. He got a life sentence. But just looking at the PSR, looking at the facts, looking at how Mr. George threatened Mr. Waters, I

don't think, Your Honor, Mr. Waters should get a life sentence. 20 years is a substantial sentence on its own standing by itself.

So we would ask for a sentence of -- well, 235 months. That's 19.58 years. So we would argue for that, for the 235 months.

THE COURT: Let me have a conversation -- you can have a seat, Mr. Corrothers, because I'm going to have a conversation with you and Ms. Bryant because I have been -- not struggling with it. That's not the word -- but I've been going back and forth on this.

Okay. I think the facts are that Mr. George is the boyfriend of the mother who's pimping out a six-year-old girl. Mr. George is the one making the little girl available, she and -- he and the mother. Mr. Waters has a baby with the sister of either Mr. George or the mother -- with Mr. George. So the little girl refers to him as her uncle, Mr. Waters somewhat as her daddy. Both are having sex with her, and she's six years old.

The little girl is diagnosed with HIV, and Mr. Waters -- no. Mr. George is tested and he has HIV, right?

I think that those are the facts.

MS. BRYANT: Yes, Your Honor.

THE COURT: So, essentially, Mr. George -- and I hate to say it like this, but has sentenced the girl to

death. This is my thing --

MS. BRYANT: Yes, sir.

THE COURT: I mean, I'm not saying this is scientific. I'm saying this is Brian Miller's thinking. I'm thinking both men have sentenced her to an emotional death.

I got a case coming up here that I'm sentencing a woman at 11:30 who showed up at some women's house with a gun, and the argument in favor of letting her go home is that she was traumatized by her ex-husband. He beat her. Well -- and then they show trauma she faced her whole life.

What trauma could be worse than this, than what we have in our case?

I told Mr. Waters last time and I told his lawyer that, how could you go over and talk to him about his case the day before when he's facing life. So I've been thinking life, but there is a part of me that also says that Mr. George's behavior -- the sexual behavior is the same. It's just -- it's brutally the same.

I guess if you have two evil acts, how do you start determining the greater evil, is kind of what I'm saying. To me, what Mr. George did is worse, but does that mean that he should have gotten death instead of life? I hate to say it like this, but those are the thoughts that run

through a person's mind when trying to determine what the appropriate sentence is.

My thought is, is that this is an above-the-guidelines sentence, but I don't know that we get to life. My initial thought is, I was looking at Mr. Waters' age. He's 35 now. 36.

THE DEFENDANT: 34. I be 35 in May, sir.

THE COURT: I notice on here it said 34, but I thought that went back to the date the report was issued. But you're 34 now.

I wrote down in my notes 420 months, which is 35 years, which is a hundred months above the guideline range. That's kind of the area that I've been thinking.

I'll give both sides a chance -- I know you've made your arguments on this, but I'll give both of you a chance to object or to tell me where you think that number is wrong.

Mr. Corrothers, I know your position is it is what it is, that the guidelines take into account all of this, that 20 years is sufficient to reasonably punish him for what he's done. The government's position is that I gave Mr. George life and that the behavior itself is the same, the behavior that Mr. Waters engaged in and the behavior that Mr. George engaged in was the same.

I think it's a little different because of what --

Ms. Bryant, what you pointed out, the positions of the two people and the fact that Mr. George gave her HIV. That means something, doesn't it?

MS. BRYANT: Are you ready for me?

THE COURT: Yes, ma'am. I'll hear from you first and then Mr. Corrothers.

MS. BRYANT: It does mean something, but I'd ask the Court not to forget that Mr. Waters gave her gonorrhea and chlamydia.

THE COURT: He did.

MS. BRYANT: I understand that's not HIV, but those are still STDs for which she has to receive treatment. And so I just -- I don't think that this case teeters on the fact that Mr. George gave her HIV and he didn't that they should get a different sentence. I just don't think it does.

I also think, when looking at the 3553(a) factors, the need to deter people who think, okay, well -- for lack of a better phrase, Mr. George was her pimp. He was bringing her to different people, letting them have sex with her. So should the john, essentially Mr. Waters, be treated differently than the pimp when he's engaging in the exact same behavior and he knows exactly what he's done. They're family. I mean, I don't think it's a leap to say that Mr. Waters knew what Mr. George was doing and

knew that Mr. George was letting CT have sex with other men and just chose to engage in that behavior and then paid for it.

And then, two, you know, I said earlier that I understand maybe the custodial link, but I think the point that you made that she looked at him as her uncle because kind of he was, that that even brings it closer together in showing that this life sentence is more appropriate because he was more in a position of trust. He was family to her.

So I just -- I can't follow that he deserves a lesser sentence because he didn't give her HIV. I think they changed the trajectory of this little girl's life and there needs to be -- besides killing someone -- and I don't even know -- I would argue that that's kind of equitable to this.

THE COURT: I think your argument -- and I'll let Mr. Corrothers follow up on this -- your better argument -- you're making it, but not making it. The question is, what sentence would I give Mr. Waters had I not sentenced Mr. George first.

MS. BRYANT: I thought about that.

THE COURT: Say, if I never sentence Mr. George, would I give Mr. Waters life.

MS. BRYANT: I think you should and I would ask

you to.

THE COURT: I'm saying for myself, what would I have done.

MS. BRYANT: Yes, sir.

THE COURT: I might have and -- considering the circumstances of this case.

MS. BRYANT: I think too had you -- I think the HIV is obviously a big deal, but I think, if you had just had Mr. Waters on your own without the HIV fact of Mr. George but the fact that he gave a six-year-old little girl two STDs and raped her in a hotel room and paid somebody for it, I just don't see you second guessing giving him a life sentence.

THE COURT: I think that's probably true.

Mr. Corrothers, you've heard the argument. And the truth is, and I'll be very honest with you, I think if I had not sentenced Mr. George and given him life and I'm thinking that Mr. George was actually more heinous that Mr. Waters, I probably give Mr. Waters life if Mr. George had never come in here.

So then the question is, do I give Mr. Waters a term of years simply because I don't think he was quite as bad -- I understand the government's position is different -- but that simply because I don't think his behavior was quite as bad as Mr. George's behavior when, had I had him

in court without Mr. Waters, would I have given him life. I would have.

So address all of that for me if you can.

MR. CORROTHERS: Well, I think the government said it best when she described Mr. Waters has a john and Mr. George as a pimp. And I would think that you can always make an inference that somebody who is a pimp and has procured multiple clients for a six-year-old is going to be worse than somebody who the government describes as a john who paid Mr. George. And at some point Mr. John -- Mr. George threatened Mr. Waters with a firearm.

I mean, I just think those are distinguishing characteristics in this particular matter. Under those circumstances, I would argue I don't think the Court would have gave him life in prison, maybe not even an upward departure just on those facts alone.

I know we've had this in other cases as far as the 20 years, how much more can you give the person past the 20 years that's going to deter this individual -- have such an effect on this individual. Because he's 35 years old, 20 years is a really long time anyway.

THE COURT: Let me hear from you, Mr. Waters, before I pronounce your sentence. Do you have anything you want to say? You can stand up or you can sit down. Either one is fine.

THE DEFENDANT: I just want to apologize to the family of the victim for everything they going through with this situation. I really don't have much to say as far as, you know what I'm saying, what all happened and everything because I really don't know. But I just want to apologize to the victim -- to the victim's family and I want to apologize to the victim and I just wish none of it ever happened at all, none of it. I just want to say I'm sorry.

THE COURT: Let me ask you this. I know I got a letter from --

MS. BRYANT: The victim's adoptive mother.

THE COURT: The adoptive mother. Is she here?

MS. BRYANT: She is.

THE COURT: Ma'am, do you want to say anything? As the representative of the victim, you have a right to.

I would say come on up. First, I want you to identify yourself. Tell me who you are.

MS. BRYANT: Your Honor, I would just ask that that portion remain under seal.

THE COURT: It will. We'll leave it under seal.

(Sealed proceedings under separate cover.)

THE COURT: Thank you. Anybody else want to be heard?

MS. BRYANT: No, Your Honor.

MR. CORROTHERS: No, Your Honor.

THE COURT: I will say this to you, I typically -- now, victims have a right to give a victim's impact statement. But, typically, I'll be very honest with you, I'm not swayed a lot typically by victim statements because I know coming in what the impact is for the most part. In fact, a lot of what the witness just mentioned was what I'm thinking.

I will tell you, however, that sometimes as a judge we start thinking about these things very analytically and it's all numbers and it's about matching this to that. That's part of it because we're supposed to stay as -- I don't know what -- the word to say. As -- I don't want to say unemotional, but as logical as we can be, right? And I can't be swayed by emotion to go one way or the other.

But what the witness brings forward -- and I say this to you -- and you got to understand, when you're a judge, not only are you looking at the victim and the victim's folks, but I'm also looking at this human being over here who is the defendant who did some bad stuff.

So I never thought this before I became a judge, but looking at a human being and saying, hey, look, I'm about to send to you prison for a long time, that's not an easy thing. In fact, I would say sentencing people to prison, because I haven't had a case where I've had to sentence

somebody to death, is the hardest thing all of us do as judges.

But when I listen to the witness, it's just like everything I was thinking, like it brings it home, right? It's like, okay, that's what I knew. And when I read this case just thinking about the circumstances, I just think about, man, you just can't do this.

All right. Here, like I said, I'm going give an upward variance because of the nature and circumstances of the offense. You're talking about raping a six-year-old girl. The history and characteristics of the defendant, not so much; to reflect the seriousness of the offense; to promote respect for the law; to, essentially, provide some amount of deterrence, not so much for Mr. Waters. I think this is a case where it's kind of the reverse. It's like, if I don't give him a severe sentence, then what message am I sending to anybody else who may even think about this. Those are my reasons for giving the upward variance.

The question is now what that upward variance would be.

Mr. Waters, I will tell you that this is not easy, but I think -- I think the witness and the government meets its burden on you. I think, had I not sentenced Mr. George first and I was faced with sentencing a man who

raped a six-year-old girl, I'd give him life. And so my thought was, you were not quite as bad as Mr. George, you didn't give her HIV, I understand what Ms. Bryant is saying about that shouldn't be one of the determining factors. But listening to the witness it has to be. That has to be one of the things I look at. It's like you've sentenced this little girl to death. I'm talking about physical, not -- and it may come later, but the things she's going to go through in her life dealing with that disease is not the same as dealing with chlamydia. It's just not.

So there is a difference, but had I -- like I said, had I not sentenced George first, it would have been an easy choice on life. So I don't think I should let the fact that he was worse than you stop me from doing what I think is the right sentence.

So here's what I'm going to do. I'm going to order you to the Bureau of Prisons for a term of life. I'm going to order you to -- if you ever are released, I'm going to order you to life of supervised release. And I don't have any, not fines, but any of the victim -- the restitution amounts.

Do we have anything?

MS. BRYANT: No, Your Honor.

THE COURT: I'm going to order that you

participate in, if you ever are released, as part of your supervised release, a sex offender treatment program. I'm going to order you to get a mental health assessment and to attend any mental health treatment that you're required to attend.

I am -- I'm not going to give you all the computer restrictions because the likelihood of him ever getting out is pretty slim, and if he does, it will be so far off in the future that none of this will even matter.

I am going to order you -- order probation to, if you are released, to report you or enlist you in any sex offender notification requirements that are in place at that time. I'm going to order you not to have any contact with the victim. I am going to order you to a substance abuse treatment program that may include drug and alcohol testing and outpatient counseling and residential treatment. And I'm going to order you to cooperate in the collection of DNA. I'm not going to order you to pay a fine, but I am going to order you to pay a $100 special assessment.

Mr. Corrothers, you want to make your objection to the sentence for appeal?

MR. CORROTHERS: You sentenced -- I didn't hear the last part.

THE COURT: You want to make your objection to

the sentence so you have a basis for appeal?

MR. CORROTHERS: Yes, Your Honor. We would -- we object to the upward variance from the guidelines.

THE COURT: Okay. I'll overrule that just so you have your record.

MR. CORROTHERS: Yes, Your Honor.

THE COURT: Now, as far as where your client serves his time, do you have a recommendation?

MR. CORROTHERS: He says somewhere in Texas, Your Honor.

THE COURT: Okay. Do this for me, Mr. Corrothers, check out where in Texas he might want to go serve his time and then contact my office, and we'll make that part of the judgment. I should have the judgment ready by Friday. So if you let me know by Friday, I'll make the recommendation.

MR. CORROTHERS: Yes, Your Honor.

THE COURT: All right. Is there anything else for us to take up in this case?

MS. BRYANT: Did you cover appeal rights? I don't know if you did the 14 days.

THE COURT: Mr. Waters, you have 14 days in which to appeal, if you choose to. If you cannot afford the cost of the appeal, you ask for leave to appeal in forma pauperis. If it's determined you cannot afford it,

you'll be allowed to pay your filing fee in installments or your filing fee will be waived. If you cannot afford a lawyer on appeal, one will be appointed to represent you. But the main thing is, if you choose to appeal, you have to file within 14 days of the date that I entered the judgment.

Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: Is there anything else we need to take up?

MS. BRYANT: No, Your Honor.

THE COURT: Let's recess and get ready for our next hearing.

(Proceedings adjourned at 10:52 a.m.)

* * * * *

REPORTER'S CERTIFICATE

I, Valarie D. Flora, FCRR, RPR, certify that the foregoing is a correct transcript of proceedings in the above-entitled matter.

Dated this the 10th day of April, 2023.

/s/ Valarie D. Flora, FCRR

-------------------------

United States Court Reporter